IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YVETTE VIGIL on behalf of
DENISE VIGIL, a minor**,**

        Plaintiff**,**

vs.                                                                                     Civ. No. 02-853 RHS

JO ANNE B**.** BARNHART**,**
Commissioner of Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing, filed July 7, 2003.[Doc. No. 20].  Ms. Yvette Vigil filed an application for Supplemental Security Income (SSI) benefits on behalf of her daughter, Denise Vigil, currently age fourteen, alleging a disability due to a learning disorder, characterized by  reading, writing and memory problems.

The  Commissioner denied Plaintiff's initial application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Administrative Law Judge ("ALJ") determined that Denise Vigil was not disabled.  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.   At the time of the Commissioner's final decision, Denise Vigil was 12 years old.

The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). The  Commissioner's  final decision can also be

reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

Plaintiff argues that the final administrative decision is not supported by substantial evidence and that the Commissioner failed to carry her burden of proof  She also contends that the Commissioner failed to apply correct legal standards to this case.

The ALJ's conclusion that Denise was not entitled to SSI benefits was partially based on information provided by her mother. Yvette Vigil filed a Disability Report-Child form which stated that Denise had not been treated for any emotional or mental problems and that she was not taking any regular medication. Tr. at 51-54. She testified at the administrative hearing that Denise had no problems seeing, hearing, running, walking, throwing a ball, riding a bike, or playing video games. Tr. at 61, 65. She stated that her daughter was able to feed her dog, wash dishes and clean her room. Tr. at 160.

An Individualized Education Program (IEP) evaluation done February 29, 2000, at Polk Middle School determined that Denise was eligible for special education services because of a speech/language learning disability. Her sixth grade teacher, Mrs. Phyllis Meyers, noted that Denise was reading and writing at a first grade level. Ms. Meyers recommended that Denise should continue to be placed in a small group program focusing on development of word recognition, phonetic reading skills and written literary skills. Tr. at 72-79, 92-99. Ms. Meyers wrote that "Denise is absent frequently and often tardy." She stated that she believed "that Denise's lack of improvement in reading/writing skills is a direct result of missing the first two periods of the day." Tr. at 75, 95.

On July 25, 2000, the Administration sent Denise to Carl Adams, PhD. for a psychological evaluation. Dr. Adams interviewed the child and her mother and administered two standardized tests. Denise received a full-scale IQ score of 69, verbal IQ score of 63 and performance IQ of 80 on the WISC-III test. Based on her response style during the test, Dr. Adams found that the verbal IQ score

2

was invalid. He concluded her performance IQ score indicated that Denise was functioning in the low average to borderline range intellectually. He opined that with more regular attendance to school and remediation, her verbal cognitive abilities would increase significantly. Tr. at 127-130.

Dr. Leroy Gabaldon, a non-examining state agency psychologist, reviewed the record in this case on August 6, 2000. He concluded that Denise had severe impairments but that they did not meet, medically equal, or functionally equal the severity of a listed impairment. Tr. at 134-137.

On May 21, 2001, a computer generated student absence inquiry reflected that Denise had multiple absences from school and an unsigned handwritten note on the document states that "Denise has missed from 60-80 days so far this school year. She has been referred for educational neglect twice this year." Tr. at 116. A letter with the same date from one of Denise Vigil's seventh grade special education teachers, Ms. Kay Hinkle, stated that Denise "has poor attendance and has been referred to court as a result of this." Tr. at 115.

An individual under the age of 18 is considered disabled if that individual " has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(C)(i). The sequential evaluation process for determining disability requires a child to show: (1) that she was not working; (2) that she had a "severe" impairment or combination of impairments; and (3) that her impairment or combination of impairments was of the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924 (2000).

The ALJ found that Denise has significant limitations as a result of her impairments, but that

3

her impairments do not meet or medically equal a Listing. He compared Denise's impairments with Listing 112.05 which requires a diagnosis of mental retardation or borderline intellectual functioning, with a verbal, performance or full scale IQ of 60 through 70, and a physical or mental impairment that would impose an additional limitation of function or a marked impairment in social or personal functioning or in maintaining concentration, persistence or pace. Tr. at 16. The ALJ found that Denise's impairment met the first requirement of the Listing because of her low-average to borderline intellectual functioning, however, he noted that she did not have an impairment that satisfied either of the other requirements of the Listing. Tr. at 17-19.

The ALJ also considered whether Denise demonstrated functional equivalence and could therefore qualify for benefits. Functional equivalence may be established regardless of whether a child's impairment is medically related to the listed impairment. The regulations provide that the six broad areas of functioning or domains that should be addressed in a finding of functional equivalence are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment is functionally equivalent to a listed impairment if a claimant has an extreme limitation in one area of functioning or marked limitations in two or more areas of functioning. 20 C.F.R. § 416.926a(b)(2).

An extreme impairment is defined as one that "interferes very seriously" with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). A marked impairment is one that "interferes seriously with ability to independently initiate, sustain or complete activities" or "a limitation that is 'more than moderate' but 'less than extreme'." 20 C.F.R. § 416.926a(e)(2)(i). When standardized tests are used as a measure of functional abilities, an extreme limitation is defined as a valid score that is three or more standard deviations below the norm and a

marked limitation is a score that is two to three standard deviations below the norm. 20 C.F.R.§ 416.926a (e)(3)(i).

The ALJ analyzed the six domains of activities in detail as they applied to Denise. The ALJ found that the child had a marked limitation in acquiring and using information, based on standardized test scores. Tr. at 21. He also found that she had moderate functional limitations in the area of attending to and completing tasks. Id. He found that Denise had no limitations in interacting and relating to others, moving about and manipulating objects, providing self care or in health and physical well-being. Tr. at 22.

Plaintiff argues that the ALJ erred when he determined that the child's limitations were not functionally equivalent in severity to a Listing. She contends that there is substantial evidence of an extreme limitation in the area of acquiring and using information and that Denise also has at least a marked limitation in the area of concentration, persistence and pace.

Plaintiff contends that evidence from 1998 shows that Denise's reading ability is impaired to an extreme degree because her score on a standardized test was more than three standard deviations below the norm. If the ALJ had found her impairment in the area of acquiring and using information was extreme, a finding of disabled would have been mandated. The ALJ specifically addressed the 1998 test results in his opinion and noted that Denise had demonstrated average cognitive functioning with a predicted achievement level slightly above average but that her reading and writing skills were within the very poor range. Tr. at 18. He did not find that the 1998 tests results indicated an extreme impairment.

The evidence in the record concerning Denise's ability to acquire and use information, including the results from the testing performed by Dr. Adams, her school records, the IEP, the comments of her special education teachers and the opinion of the consulting state agency

5

psychologist was thoroughly discussed in the portion of the ALJ's opinion which addressed the question of whether the child's impairments met or were medically equal to a listed impairment. Tr. at 16-19. That evidence is also relevant to the ALJ's determination regarding functional equivalence. His finding that Denise has a marked rather than an extreme impairment in this domain is supported by substantial evidence and consistent with the opinions of her teachers and the examining psychologist. The Court will not reweigh this evidence or substitute its judgment for that of the Commissioner. See Sisco v. U.S. Dept. of Health & Hum. Serv., 10 F.3d 739, 741 (10th Cir. 1993).

Plaintiff also contends that the ALJ erred when he found that the child had only moderate impairment in the area of attending to and completing tasks. She argues that Denise had "grave difficulty in this area and the ALJ's implication that Denise just need to try harder and pay attention is unconscionable." Plaintiff's Brief at 6. The Court has reviewed the well-reasoned and detailed decision and finds that the ALJ's observation that "Denise seems to have the capability to perform if and when she attend classes, pays attention and applies herself to the tasks at hand," Tr. at 19, is supported by the evidence. At no point in the decision does the ALJ imply that Denise does not have a genuine learning disability.

Plaintiff contends that it was improper for the ALJ to rely on Denise's absences to find that some of her problems were remediable. The ALJ found that Denise had missed from 60-80 days of school and concluded that "school absences and tardiness...apparently account for at least part of Denise's low level of achievement." Tr. at 18. Even if the school attendance records upon which the ALJ relied were inaccurate, the evidence showed that Denise's teachers and the examining psychologist also identified excessive absences as a problem. Tr. at 72-75, 82-83, 115-116, 130. It was not error and certainly not "unconscionable" for the ALJ to agree with those assessments.

Plaintiff also argues that there is "clear, uncontroverted evidence that her [daughter's] pace is at least moderately impaired." This statement is fully consistent with the ALJ's finding of moderate limitation in the domain of attending and completing tasks and provides no support for the proposition that the ALJ should have made a finding of marked impairment in that domain.

The Court does not doubt that Denise suffers from learning disabilities which make her life more difficult than that of other children her age. Although the ALJ found that Denise had a severe impairment, Tr. at 15, he carefully considered the evidence and determined that the child's impairment did not meet the criteria for SSI benefits under the regulations governing functional equivalence. While the Court does not conclude that no reasonable ALJ could have arrived at a different conclusion, the determination reached here is supported by substantial evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand for Payment of Benefits, or in the Alternative, for a Rehearing, filed July 7, 2003 [Doc. No. 10] is denied and this cause is dismissed.

_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE